[No. 20201.    Department One.    June 3, 1927.]

A. B. FOSSEEN & COMPANY, *Respondent,* v. KENNEWICK SUPPLY & STORAGE COMPANY, *Appellant.*[1]

[1] SALES (122, 143)—REMEDIES OF SELLER—ELECTION — RESALES — DAMAGES—MEASURE OF DAMAGES. Where a wholesale dealer in arsenate of lead refused to accept and pay for lead purchased for it by plaintiff, and plaintiff resold part of it without notice and kept part for two years, he thereby elected to treat it as his own, and his measure of damages is the difference between the contract price and the market price at the time of the purchase, without proof of which defendant is entitled to a directed verdict.

Appeal from a judgment of the superior court for Benton county, Truax, J., entered in favor of the plaintiff notwithstanding the verdict of a jury rendered

[1]Reported in 256 Pac. 779.

in favor of the defendant, in an action on contract. Affirmed.

*M. M. Moulton,* for appellant.

*Hugo F. Luhman,* for respondent.

PER CURIAM.—The respondent, A. B. Fosseen & Company, is a wholesale jobber, engaged, as part of its business, in selling to retail dealers arsenate of lead. The appellant is a retail dealer in the same article. In the present action, the respondent sought to recover upon a balance of an account for lead sold and delivered by it to the appellant. The appellant defended by counter-claim. In substance, it alleged that, in the spring of the year 1923, there was a shortage in the supply of arsenate of lead, and that the respondent was having difficulty in obtaining a sufficient quantity of lead to accommodate its customers. That the respondent, because of the conditions, requested the appellant to buy such lead as it could, agreeing to take it off the appellant's hands at its cost price. That the appellant made one such purchase, which the respondent accepted and paid for. That later it found an opportunity to purchase a car load of 40,000 pounds, which was a greater quantity than it needed in its own business. That it called the attention of the respondent to the opportunity, when it agreed to take such of the lead as the appellant did not need up to ten or twenty thousand pounds. That it thereupon purchased the car load, and upon its receipt tendered the respondent ten thousand pounds of the lead. That the respondent refused to receive or pay for the lead, compelling the appellant to dispose of it at a loss in excess of the respondent's demand. The prayer was for a recovery of this excess, alleged to be $230.36.

Issue was taken on the allegations of the counter-claim, and a trial had by the court sitting with a jury,

resulting in a verdict in favor of the appellant for the sum of $43.74. After a return of the verdict, the respondent moved for a judgment in its favor notwith-. standing the verdict. This motion the court granted, entering a judgment in favor of the respondent for the amount demanded in its complaint.

[1] The court gave as a reason for its judgment that the appellant had failed to prove by competent evidence that it had sustained any damage by the refusal of the respondent to take the property. This conclusion, we think, follows from the record. The respondent refused to take the lead shortly after its receipt by the appellant. Since the refusal was wrongful, the appellant then had a choice of remedies: (1) It could store and hold the property subject to the buyer's order and recover the contract price; (2) it could resell the property after notice to the buyer and recover the difference between the price received and the contract price; or (3) it could retain the property as its own and recover the difference between the market value of the property at the time and place of the tendered delivery and the contract price. *Hess v. Seitzick,* 95 Wash. 393, 163 Pac. 941. The appellant's conduct was in effect a choice of the latter of these remedies. It kept the property, making no effort at all to sell it in the year 1923. In 1924, it sold a part of it at retail for the contract price. In the late spring of 1925, it sold the remainder without notice to the respondent, thus treating it as its own property. The measure of its damages, therefore, was the difference between the cost price of the lead and its market value at the time of the breach of the contract. An examination of the record fails to show that the appellant offered any evidence on this question. Its proofs were of the market price at the time of the sale, some two years later than the time of the purchase. This was a

time too remote from the time of the breach of the contract to afford any measure of its actual loss. Arsenate of lead was abnormally high in price at the time of the purchase, but the evidence indicates that had it been sold at any time in the year 1923, the loss would have been nominal.

There was no error in the judgment of the trial court, and the judgment will stand affirmed.